# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOROTHEA W. HELTON, | : | CIVIL ACTION NO: 1:20-CV-00076 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I.  Introduction.

Plaintiff Dorothea W. Helton brings a claim under the Federal Tort Claims Act, ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80, against the United States claiming that she was injured on the steps of the post office in Mt. Union, Pennsylvania. Currently pending is the United States' motion for summary judgment.  In addition to seeking summary judgment on the merits, in connection with that motion, the United States contends that this court lacks subject-matter jurisdiction based on the independent-contractor exception to the FTCA.  Because we agree that we lack subject-matter jurisdiction, will we grant the United States' motion on that basis.

## II.  Background and Procedural History.

Claiming that she was injured on property in Mt. Union, Pennsylvania belonging to the United States Postal Service ("USPS"), Helton began this action by filing a complaint naming the United States Post Office as the defendant. Although her complaint itself does not set forth the facts regarding her alleged injury, in the documents that she attached as exhibits to her complaint, Helton states that she fell on icy steps at the post office and injured her vertebrae.  One of the exhibits that Helton attached to her complaint is a "Claim for Damage, Injury, or Death" that Helton submitted to the USPS's torts-claim coordinator. *Doc. 1* at 5. That claim is on Standard Form 95, which is the standard form for submitting a tort claim to a federal agency. *See* 28 U.S.C. § 14.2.  Given this, we construed the complaint liberally to assert a claim under the FTCA.

The United States filed an answer to the complaint.  It also filed a motion to dismiss the United States Post Office and to substitute the United States as the proper defendant.  Because the only proper defendant in a FTCA case is the United States, the court granted the United States' motion.  The parties later consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned.

After the discovery deadline passed but within the deadline set for the filing of dispositive motions, the United States filed a motion for summary judgment.

The United States also filed a brief in support of that motion and a statement of material facts with supporting documents.  We ordered Helton to file a brief in opposition to the motion for summary judgment, a response to the statement of material facts filed by the United States, and any transcripts, affidavits, or other relevant documents in accordance with Local Rules 7.6 and 56.1.

After Helton failed to file a brief or other documents in opposition to the pending motion for summary judgment, we ordered her to show cause why this action should not be dismissed pursuant to Fed. R. Civ. P. 41(b) because she failed to prosecute this action.  We noted that were Helton to fail to show cause, we may deem her to have abandoned this lawsuit, and we may dismiss this case.  Helton requested and received an extension of time to respond to the show cause order.

On October 21, 2021, Helton filed a document, which it appears she intended to be her brief in opposition to the summary judgment motion. *See doc. 40*.  To that document, Helton attached numerous exhibits consisting of medical records, witness statements that are neither sworn to nor made under penalty of perjury, and photographs. *See docs. 40-1, 40-2*.  Given this filing, we concluded that we would not deem Helton to have abandoned this case, and we would not dismiss the case on the basis that she failed to prosecute this action.  We also noted, however, that Helton still had not properly responded to the United States' motion.  Even if we considered the document that she filed on October 21, 2021, as

her brief in opposition to the motion, she had not filed a response to the United States' statement of material facts.  We provided Helton with another opportunity to do so.  And because she is proceeding *pro se* and it appeared that she may not know how to respond to a statement of material facts, we explained to her how to respond to a statement of material facts.  We ordered Helton to file a response to the United States' statement of material facts and supporting summary judgment evidence in accordance with Local Rules 7.6 and 56.1.

Helton requested and received an extension of time to respond to the defendant's motion, but she still did not respond by the extended deadline.  And after she did not respond, the United States filed a reply brief in support of its motion.

Helton then requested another extension of time to respond explaining the numerous obstacles she has faced recently that prevented her from timely responding.  We again granted Helton an extension of time to respond to the United States' statement of material facts.  And we held a telephone conference with the parties on January 10, 2022.  Finally, on January 28, 2022, Helton filed a response to the United States' statement of material facts.

## III.  Discussion.

As noted in the introduction, in addition to seeking summary judgment on the merits, the United States contends that this court lacks subject-matter jurisdiction based on the independent-contractor exception to the FTCA.  And citing to Fed. R. Civ. P. 12(b)(1), the United States asserts in its brief that it is moving to dismiss for lack of subject-matter jurisdiction.  Because it is clear from the United States' brief that it is moving to dismiss based on lack of subject-matter jurisdiction and because Helton had a full and fair opportunity to respond to that argument and to respond to the facts set forth by the United States regarding that argument, we will consider the United States' motion as, in part, a motion to dismiss for lack of subject-matter jurisdiction.

Our discussion proceeds in three steps.  First, we set forth the standards for a Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. Second, we set forth the undisputed material facts that the United States has presented in support of its assertion that the court lacks subject-matter jurisdiction. Third, considering the undisputed facts, we conclude that this court lacks subject-matter jurisdiction based on the independent-contractor exception to the FTCA.

## A.  Rule 12(b)(1) Standards.

Federal Rule of Civil Procedure 12(b)(1) permits the dismissal of an action

for lack of subject-matter jurisdiction.  Challenges to subject-matter jurisdiction

under Rule 12(b)(1) may be "facial" or "factual." *Papp v. Fore-Kast Sales Co.*, 842

F.3d 805, 811 (3d Cir. 2016).  A facial attack contests the sufficiency of the

pleadings. *Id.*  When there is a facial attack, "we apply the same standard as on

review of a motion to dismiss under Rule 12(b)(6)." *In re Horizon Healthcare*

*Servs. Inc. Data Breach Litig.*, 846 F.3d 625,633 (3d Cir. 2017).  A factual

challenge to the court's subject-matter jurisdiction, on the other hand, "attacks the

factual allegations underlying the complaint's assertion of jurisdiction, either

through the filing of an answer or 'otherwise present[ing] competing facts.'" *Davis*

*v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Constitution Party of*

*Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).  In a factual attack, the court

does not presume that the plaintiff's allegations are true. *Id.*  Rather, "[i]n contrast

to a facial challenge, a factual challenge allows 'a court [to] weigh and consider

evidence outside the pleadings.'" *Id.* (quoting *Aichele*, 757 F.3d at 358)).

Here, the United States presents a factual challenge to the court's subject-

matter jurisdiction.  "The defendant has the initial burden of production to raise a

factual challenge." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29,

35 (3d Cir. 2018).  The United States has met that initial burden by providing a

statement of material facts with supporting documents.  When, as here, a factual

challenge is properly raised, the plaintiff has '"the burden of proof that jurisdiction

does in fact exist,' and the court 'is free to weigh the evidence and satisfy itself as

to the existence of its power to hear the case.'" *Id*. (quoting *Mortensen v. First Fed.*

*Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).


### B.  Material Facts.

The following facts are the material facts for purposes of the pending motion

to the extent the motion is construed as a motion to dismiss for lack of subject-

matter jurisdiction.[1]

Mandy Stevens has been employed by the USPS for 21 years. *Doc. 30* ¶ 12;

*Doc. 51* ¶ 12.[2]  She has been a Postmaster since 2010, and in that capacity, she

oversees nine post offices, including the Mt. Union Post Office. *Doc. 30* ¶ 13; *Doc.*

---

[1] In accordance with Local Rule 56.1, the United States filed a statement of
material facts, and Helton filed a response.  Helton admitted many of the United
States' statements of material fact.  Although she disagreed with some of them, she
has not pointed to evidence in the record to create a genuine factual dispute.  Thus,
we consider these facts to be undisputed.  Although the facts were presented as
they would be in connection with a motion for summary judgment, because Helton
had a full and fair opportunity to respond to the facts, we use these facts in
connection with the motion to dismiss for lack of subject-matter jurisdiction.

[2] Here, as with many other facts set forth by the United States, Helton
contends that she does not know whether this is true.  She has not pointed to any
evidence, however, to call this statement into question.  Thus, we consider this fact
(and others as to which Helton responds merely by stating that she does not know
whether the statement is true) as undisputed.

*51* ¶ 13.  Stevens is involved in employee hiring decisions for the post offices that

she oversees, but ultimate approval for hiring USPS employees is decided by the

Central USPS Office. *Doc. 30* ¶ 14; *Doc. 51* ¶ 14.

As Postmaster, Stevens oversees building maintenance at the Mt. Union Post

Office. *Doc. 30* ¶ 15; *Doc. 51* ¶ 15.[3]  She can request building maintenance

services on an as-needed basis, and she can engage independent contractors. *Doc.

30* ¶ 16; *Doc. 51* ¶ 16.  Agreements between the USPS and independent contractors

are limited to one-year terms. *Doc. 30* ¶ 17; *Doc. 51* ¶ 17.  Independent contractors

are paid through a purchasing system known as eBuy, and they are paid from a

budget separate from the budget for USPS operational expenses, which includes

employee salaries. *Doc. 30* ¶ 18; *Doc. 51* ¶ 18.

In 2013, Stevens engaged Clyde Bedsaul to perform snow removal services

at the Mt. Union Post Office. *Doc. 30* ¶ 19; *Doc. 51* ¶ 19.[4]  Bedsaul is not, and has

---

[3] Here, as with many other facts set forth by the United States, Helton responds by asking questions.  She has not pointed to any evidence, however, to call this statement into question.  Thus, we consider this fact (and others as to which Helton responds merely by asking questions) as undisputed.

[4] In its statement of material facts, the United States refers to Bedsaul as an independent contractor.  But whether someone is an independent contractor is a question of law. *Cf. Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (stating in connection with claims under the Fair Labor Standards Act and under Pennsylvania law that "the ultimate question of law is whether Plaintiffs are employees or independent contractors, which is for a judge to decide"), *cert. denied,* 141 S. Ct. 2629 (2021).  Thus, in setting forth the material facts, we will have omitted references to Bedsaul as an independent contractor.

never been, employed by the federal government, including by the USPS. *Doc. 30*

*¶ 21; Doc. 51 ¶ 21.* He received no health, retirement, or other fringe benefits from

the USPS. *Doc. 30 ¶ 21; Doc. 51 ¶ 21.*

Bedsaul set the rates he charged for snow removal services, which included

shoveling and salting the sidewalks and steps outside the Mt. Union Post Office.

*Doc. 30 ¶ 23; Doc. 51 ¶ 23.* He charged a flat rate of $50 per day for snow

shoveling and an additional $25 per day for salting, regardless of how much time

he spent performing the work, and Stevens agreed to those rates. *Doc. 30 ¶ 24;*

*Doc. 51 ¶ 24.* Stevens asked Bedsaul to reduce their agreement to a writing for

record keeping purposes; Bedsaul did so. *Doc. 30 ¶ 25; Doc. 51 ¶ 25.*

Bedsaul and Stevens entered into a new contract each year between 2013

and 2019, although the terms did not change. *Doc. 30 ¶ 26; Doc. 51 ¶ 26.* The

document titled "Snow Removable for 2016 2017" ("Contract"), is an accurate

copy of the agreement between Bedsaul and Stevens in effect during December

2016. *Doc. 30 ¶ 27; Doc. 51 ¶ 27.*[5] Pursuant to the Contract, Bedsaul was

responsible to (a) salt all sidewalks and steps, (b) clean snow off mail trucks, mail

vans, and mailboxes, (c) shovel walkways, steps, and sidewalks, and (d) keep the

---

[5] Helton contends that she does not have a copy of this Contract. *See doc. 51*
¶ 27. But the United States submitted the Contract as one of the exhibits in support
of its statement of material facts. *See doc. 30-7* at 1. And although we had a
telephone conference on January 10, 2022, Helton did not contend then that she did
not have a copy of the Contract.

premises clear of all ice and snow. *Doc. 30* ¶ 28; *Doc. 51* ¶ 28.  The Contract did

not provide a precipitation threshold that would prompt Bedsaul to perform

services; rather, although he was responsible to "keep things clear at all times,"

Bedsaul would determine when specifically to shovel and to salt, and he would

perform services even if it was snowing "just a little." *Doc. 30* ¶ 29; *Doc. 51* ¶ 29.

Bedsaul would check weather reports and physically monitor the conditions at the

Mt. Union Post Office whenever it precipitated. *Doc. 30* ¶ 30; *Doc. 51* ¶ 30.  And

he would continually check on the premises and address snowfall that occurred

even after it had snowed. *Doc. 30* ¶ 30; *Doc. 51* ¶ 30.

Bedsaul was "self-monitored": neither Stevens nor any other USPS

employee supervised his work or controlled how he physically performed his

duties. *Doc. 30* ¶ 31; *Doc. 51* ¶ 31.  Supplies that Bedsaul used to perform his

duties were stored outside behind the Mt. Union Post Office, and they were

accessible without a key and at times that the Mt. Union Post Office was closed.

*Doc. 30* ¶ 32; *Doc. 51* ¶ 32.  Accordingly, Bedsaul would oftentimes shovel and

salt when USPS employees were not present, depending on the amount and timing

of precipitation. *Doc. 30* ¶ 33; *Doc. 51* ¶ 33.

After Bedsaul shoveled and salted, he would submit a handwritten invoice to

Stevens, who would then enter the handwritten invoice into eBuy, which would

issue payment directly to Bedsaul's Paypal account. *Doc. 30* ¶ 34; *Doc. 51* ¶ 34.

If, however, the amount of precipitation was minimal such that Bedsaul salted but

did not need to spend significant time shoveling, he would not submit an invoice

even though he applied salt prophylactically. *Doc. 30* ¶ 36; *Doc. 51* ¶ 36.  Bedsaul

does not know whether any USPS employee checked his work, but he expected to

be paid for every invoice he submitted. *Doc. 30* ¶ 35; *Doc. 51* ¶ 35.  While Stevens

could not reject an invoice submitted for payment, she could refuse to engage

Bedsaul in subsequent years if he performed substandard work. *Doc. 30* ¶ 35; *Doc.

51* ¶ 35.

At approximately 2:30 p.m. on December 15, 2016, Helton fell on the steps

of the Mt. Union Post Office. *Doc. 30* ¶¶ 55, 59, 70; *Doc. 51* ¶¶ 55, 59, 70.  Helton

asserts that she fell on ice on the steps. *Doc. 30* ¶  74; *Doc. 51* ¶ 74.

### C.  Because independent contractor exception to the FTCA applies, this court lacks subject-matter jurisdiction.

The United States contends that this court lacks subject-matter jurisdiction

because Bedsaul, who was responsible for keeping the steps of the post office

where Helton fell clear of snow and ice, was an independent contractor, and the

United States cannot be liable under the FTCA for negligence of an independent

contractor.

"It is axiomatic that the United States may not be sued without its consent

and that the existence of consent is a prerequisite for jurisdiction." *U.S. v. Mitchell,*

463 U.S. 206, 212 (1983).  "Absent a waiver, sovereign immunity shields the

Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471,

475 (1994).  Thus, "[u]nder the doctrine of sovereign immunity, the United States

'is immune from suit save as it consents to be sued . . . and the terms of its consent

to be sued in any court define that court's jurisdiction to entertain the suit.'"

*Cooper v. C.I.R.*, 718 F.3d 216, 220 (3d Cir. 2013) (quoting *U. S. v. Testan*, 424

U.S. 392, 399 (1976)).

 "The FTCA 'was designed primarily to remove the sovereign immunity of

the United States from suits in tort and, with certain specific exceptions, to render

the Government liable in tort as a private individual would be under like

circumstances.'" *Sosa v. Alvarez-Machain,* 542 U.S. 692, 700 (2004) (quoting

*Richards v. United States*, 369 U.S. 1, 6 (1962)).  Federal district courts generally

have jurisdiction over civil actions against the United States for damages "for

injury or loss of property, or personal injury or death caused by the negligent or

wrongful act or omission of any employee of the Government while acting within

the scope of his office or employment, under circumstance where the United

States, if a private person, would be liable to the claimant in accordance with the

law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

 The FTCA's waiver of sovereign immunity contains numerous statutory

exceptions. *See* 28 U.S.C. § 2680.  In addition to those statutory exceptions, the

FTCA has been construed to exclude liability for the negligence of an independent contractor. "Title 28 U.S.C. § 2671 explains that 'Federal agency' and 'Employee of the government' do not include any contractor with the United States." *Norman v. United States*, 111 F.3d 356, 357 (3d Cir. 1997). "Thus, there is an independent-contractor exemption in the Federal Tort Claims Act." *Id*.

Here, the undisputed facts show that Bedsaul was responsible for keeping the steps of the post office where Helton fell clear of snow and ice. If Bedsaul was an employee of the United States, then the United States may be liable under the FTCA for any negligence that caused Helton harm. But if Bedsaul was an independent contractor, then the United States cannot be liable under the FTCA for any negligence that caused Helton harm and this court lacks subject-matter jurisdiction over Helton's FTCA claim.

Whether an individual is an employee or an independent contractor for purposes of the FTCA is determined by federal law. *Nolden v. United States*, No. 1:12-CV-01541, 2014 WL 1513993, at *6 (M.D. Pa. Apr. 16, 2014). "The critical factor used to distinguish a federal agency employee from an independent contractor is whether the government has the power 'to control the detailed physical performance of the contractor.'" *Norman*, 111 F.3d at 357 (quoting *United States v. Orleans* 425 U.S. 807, 814 (1976)). "Control is determined by the level of physical supervision or direction the Government exerts over the daily

operations of the contractor." *Nolden*, 2014 WL 1513993, at *4.  Thus, "[w]hen a

federal actor supervises the 'day-to-day operations' of the individual, she is

generally considered an employee of the government." *Chapman v. United States*,

No. 3:19-CV-00797, 2020 WL 4819539 (M.D. Pa. Aug. 19, 2020) (quoting *E.D. v.*

*United States*, 764 F. App'x 169, 172 (3d Cir. 2019)).  But "[w]hen the individual

manages the daily functioning of her job, but a federal actor retains broad

supervisory powers, she is an independent contractor." *Id*.

Here, the undisputed facts show that the USPS did not control Bedsaul's

performance such that he could be considered an employee of the USPS.  Bedsaul

was paid a flat rate for cleaning off and shoveling snow and a flat rate for salting

sidewalks and steps no matter how long it took him to do those tasks.  And he

determined when to shovel and when to salt.  Moreover, no USPS employee

supervised his work or controlled how he performed his duties.  And Bedsaul did

not receive any fringe benefits such as an employee might receive.  Further,

Bedsaul was paid through the eBuy system, which is the system used by the USPS

to pay independent contractors.  And he entered into a new contract every year, as

was required for independent contractors.  All these facts point to Bedsaul being an

independent contractor.  And Helton has not countered with any evidence that

points to Bedsaul being an employee of the USPS.  Thus, we conclude that

Bedsaul was an independent contractor.

14

In sum, because Bedsaul was an independent contractor, who was responsible for keeping the steps where Helton fell free of snow and ice, and the United States cannot be liable under the FTCA for the negligence of an independent contractor, this court lacks subject-matter jurisdiction over Helton's FTCA claim.

## IV. Conclusion.

Based on the foregoing, we will grant the United States' motion to the extent it is construed as a motion to dismiss for lack of subject-matter jurisdiction. An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge